IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BABAESU BEY,<br><br>                    Petitioner,<br><br>       v.<br><br>GERALD ROZUM, et al.,<br><br>                    Respondent. | CIVIL ACTION<br>NO. 13-325 |

**<u>OPINION</u>**

**Slomsky, J.**                                                    **September 27, 2016**

**I.   INTRODUCTION**

Before the Court are the Objections of Babaesu Bey ("Petitioner") to Magistrate Judge David R. Strawbridge's Report and Recommendation ("R&R").  Judge Strawbridge found that the Petition for Writ of Habeas Corpus filed by Petitioner was untimely, and in the alternative, was procedurally defaulted and/or meritless.  (Doc. No. 18.)  Petitioner sought relief in his Petition based on violations of his Sixth Amendment rights to a speedy trial, effective assistance of counsel, an impartial jury, his right to compulsory process, and his right to waive trial counsel. He also claimed in the Petition a violation of his Fourteenth Amendment right to due process of law.  (<u>Id.</u> ¶ 1.)

To his detriment however, Petitioner filed his Petition one day after the one-year statute of limitations to file a federal habeas petition had expired.  To overcome this impediment, Petitioner argues that the Commonwealth of Pennsylvania's waived the one-year statute of limitations by not raising it as a defense in this case and that the Magistrate Judge erred in raising it <u>sua</u> <u>sponte</u>.  (Doc. No. 25.)  Moreover, Petitioner contends in any event that equitable tolling

would excuse the untimely filing of the Petition.  (Doc. No. 1.)  Other reasons were set forth in the Petition to vacate his state court conviction.

Following a review of filings by the parties and the pertinent state court record, Magistrate Judge Strawbridge issued a Report and Recommendation.  He recommended the Petition for Writ of Habeas Corpus be denied due to Petitioner's untimely filing, procedural default and/or for lack of adequate ground on the merits.  (Doc. No. 18.)  Petitioner filed Objections to the Report and Recommendation.  (Doc. No. 25.)  For reasons that follow, this Court will approve and adopt Magistrate Judge Strawbridge's Report and Recommendation (Doc. No. 18), and deny the Petition for Writ of Habeas Corpus (Doc. No. 1).

## II.    BACKGROUND[1]

Petitioner is incarcerated at the State Correctional Institution Somerset and is serving a life sentence plus ten to twenty years.  In 2003, Petitioner was convicted of first degree murder, attempted murder, violation of the Uniform Firearms Act, possession of an instrument of crime, aggravated assault, and recklessly endangering another person.  The facts leading to this conviction are quoted in the Report and Recommendation as they were summarized by the trial court:

> On Sunday, May 2, 1999, at approximately 4:30 p.m., Brian Ross (Ross) and Larry Cutner (Cutner) left the Faith Tabernacle Church on 19th Street and Susquehanna Avenue in the City and County of Philadelphia to go to the China Star Chinese restaurant to buy something to eat. Upon arrival, Ross and Cutner placed their order at the window, and stood in the doorway to the store while they

---

[1]  For purposes of this Opinion, the Court has considered the Petition for Writ of Habeas Corpus (Doc. No. 1), the Response to the Petition (Doc. No. 9), Petitioner's Reply to the Response (Doc. No. 14), United States Magistrate Judge David R. Strawbridge's Order and Memorandum Directing Petitioner to Show Cause Why His Petition Should Not Be Dismissed as Untimely (Doc. Nos. 15, 16), Petitioner's Response to the Show Cause Order (Doc. No. 17), Magistrate Judge Strawbridge's Report and Recommendation to the Petition (Doc. No. 18), Petitioner's Objections to the Report and Recommendation (Doc. No. 25), and the pertinent state court record.

awaited their food. Brian Rowley (Rowley), who had entered the store behind the two, walked over to the window to speak with the store owner who was busy preparing food. About that time, appellant entered the restaurant. Ross and Cutner moved aside to facilitate his entry, Ross stepping back inside of the store, Cutner stepping forward towards the outside of the store. Appellant entered the store and walked past Ross toward Rowley. Rowley, who had been unable to speak with the owner at that time, turned to leave the store and saw appellant behind him with a gun in his hand. Appellant and Rowley had been friends, but were now at odds as a result of an incident where appellant was shot inside Rowley's house. Appellant aimed the gun at Rowely and fired about four shots, hitting Rowley in the side and shoulder. Cutner heard the gunshots ring out and ducked in response to the sound. Immediately after hearing the shots, Cutner saw Rowley run out of the store, down Gratz Street with appellant in pursuit. Appellant had a gun in his hand as he chased Rowley. Cutner then looked up to see that Ross had exited the store and was running back towards the church. As Cutner watched, Ross ran approximately 60 yards, began to stumble, and finally collapsed on the steps of the church. Cutner saw that Ross had been shot and told someone to call 911. Philadelphia Police Officer Vivica Williams, who responded to the radio call of shots fired at 19th and Susquehanna, arrived to find Ross collapsed on the church steps and a woman administering aid. She called for an ambulance but quickly determined that Ross' wounds were too critical to wait for the ambulance. Officer Williams transported Ross to Temple University Hospital in the back of her patrol car. The bullet that hit Ross, went through his arm into his chest. Ross was pronounced dead at approximately 5:03 p.m., of a gunshot wound to the chest. Lieutenant James Smith, a supervisor in the 22nd Police District, also responded to the radio call. Shortly after he arrived at 19th and Susquehanna, he received information that there was another victim around the corner at 2266 North Gratz Street. When he arrived at the address, he found Rowley. Rowley told Lt. Smith that he had been shot by "Baba" and gave a description of the shooter. Rowley was transported to Temple Hospital by ambulance. This description was broadcast over police radio. Rowley and Cutner gave formal statements to police including identifying appellant's photograph from a photo array. Appellant was arrested, found guilty of all charges and sentenced to life imprisonment plus 10-20 years.

(R&R at 2 (quoting Commw. v. Bey, 437 EDA 2005, CP 9906-0382 (Pa. Ct. Cm. Pl. Feb. 9, 2007)).)  Petitioner's subsequent state court proceedings were summarized as follows:

Following the convictions, he failed to appeal in a timely manner, allegedly due to ineffectiveness of his trial counsel.   His direct appeal rights were, however, reinstated via Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 et. seq., on January 7, 2005. (State Ct. Rec.)   He then pursued his

appeal to the Superior Court[2], where, on September 21, 2007, it was denied. *Commw. v. Bey*, 437 EDA 2005 (Sep. 21, 2007).  On April 28, 2008, his timely petition to the Pennsylvania Supreme Court for allowance of appeal was also denied.  (State Ct. Rec.)

Petitioner then sought collateral review through the PCRA process.  His petition, with appended brief, was docketed on October 31, 2008, although postmarked October 29, 2008. (*Id.*)  On February 9, 2010, the PCRA court denied him relief.[3] (State. Ct. Rec.)  Bey appealed that decision to the Superior Court, where, on August 11, 2011, the dismissal was affirmed. *Commw. v. Bey*, 549 EDA 2010 (Aug. 11, 2011).  Bey petitioned the Pennsylvania Supreme Court for allowance of appeal.  That petition was denied on April 10, 2012. (*Id.*)

(R&R at 3-4.)

On January 18, 2013, Petitioner filed a Petition for Writ of Habeas Corpus.  (Doc. No. 1.)  On May 8, 2013, this case was referred to Magistrate Judge David R. Strawbridge for a Report and Recommendation.  (Doc. No. 2.)  On August 30, 2013, Respondents filed a Response to the Petition, and on December 26, 2013, Petitioner filed a Reply.  (Doc. Nos. 9, 14.)  On June 11, 2015, Magistrate Judge Strawbridge issued a Memorandum and Order that required Petitioner to show cause in writing on or before July 13, 2015, as to why the Magistrate Judge should not recommend that the Habeas Petition be dismissed as untimely.  (Doc. Nos. 15, 16.)  On July 1, 2015, Petitioner responded to the Order to Show Cause.  (Doc. No. 17.)  On August 21, 2015, the Report and Recommendation was filed.  (Doc. No. 18.)  On November 20, 2015, Petitioner filed lengthy Objections to the Report and Recommendation.  (Doc. No. 25.)  Petitioner's Objections to the Report and Recommendation are now before this Court for review.

---

[2] [Footnote 3 of the R&R states]:  Bey's counsel on appeal petitioned to withdraw from the representation; however, the petition was ultimately denied by the Superior Court.  *Commw. v. Bey*, 437 EDA 2005 (Oct. 20, 2006.)

[3] [Footnote 4 of the R&R states]:  The PCRA court also granted his PCRA attorney's motion to withdraw as counsel in that order.

### III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  Any party may file objections in response to the magistrate judge's report and recommendation.  Id. at § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions."  Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir.1987).  See also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]"  Savior v. Superintendent of Huntingdon SCI, No. 11–5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina College v. Russell, 499 U.S. 225, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper."  Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

**IV.    ANALYSIS**

Petitioner makes eight Objections to the Report and Recommendation.  (Doc. No. 18.) First, he argues that his untimely Petition should be excused because the Commonwealth of Pennsylvania waived the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and because equitable tolling is applicable here.  Petitioner also argues that Magistrate Judge Strawbridge abused his discretion by raising the statute of limitations issue <u>sua</u> <u>sponte</u>.  Second, Petitioner argues that his Sixth Amendment right to a speedy trial was violated and objects to Magistrate Judge Strawbridge's finding that this claim was procedurally defaulted, or in the alternative, meritless.  Third, Petitioner argues that he was denied his Sixth Amendment right to effective assistance of counsel and objects to Magistrate Judge Strawbridge's finding that this claim is procedurally defaulted. Fourth, Petitioner argues that his Sixth Amendment right to an impartial jury was denied.  Petitioner objects to Magistrate Judge Strawbridge's finding that the trial court properly decided that a hearing on a juror's alleged misconduct was not necessary.  Fifth, Petitioner argues that he was denied his Sixth Amendment right to compulsory process and objects to Magistrate Judge Strawbridge's finding that the claim is procedurally defaulted, or in the alternative, meritless.  Sixth, Petitioner objects to Magistrate Judge Strawbridge's finding that his claim involving waiver of trial counsel was procedurally defaulted.  Seventh, Petitioner avers that he was denied his Fourteenth Amendment right to a fair trial and objects to Magistrate Judge Strawbridge's finding that the claim was procedurally defaulted, or in the alternative, meritless.   Regarding this claim, Petitioner specifically objects to findings that he failed to provide sufficient evidence to establish a <u>Brady</u> violation or to establish that the prosecution falsified testimony presented to the jury.  Finally, Petitioner's eighth objection is to Magistrate Judge Strawbridge's recommendation that no Certificate of Appealability (COA) should be issued.

6

The Court will address each objection.  For the following reasons, this Court will approve and adopt Magistrate Judge Strawbridge's Report and Recommendation because the claims in the Petition are either untimely, or in the alternative, are procedurally defaulted and/or meritless.

### A.     Petitioner's Objection to the Finding that his Petition is Untimely

Petitioner first objects to the finding that his Petition should be dismissed as untimely. The Magistrate Judge raised the statutory limitations period under the AEDPA sua sponte, and afforded Petitioner the opportunity to show cause why the Petition should not be denied as untimely.   Ultimately, the R&R recommends that the Petition be denied as untimely and that reason alone can be a basis for dismissal.  (Doc. No. 18 at 4.)  The Magistrate Judge correctly came to this conclusion.

The AEDPA has a one-year limitation period for filing a federal petition for a writ of habeas corpus.  28 U.S.C. § 2244(d)(1)-(2).  The limitation period starts to run on the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking review, unless an alternative start date applies, which does not apply here.  28 U.S.C. § 2244(d)(1)(A).   However, pursuant to 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Petitioner filed his Petition at the earliest, on January 9, 2013, the date that Petitioner signed the Petition.[4]  To be timely, his petition should have been filed by January 8, 2013.  This

---

[4]   Petitioner asserts that he placed the Petition in the prison mail system on January 9, 2013.  The Petition was postmarked January 16, 2013, and the Petition was not filed until January 18, 2013.   As the Magistrate Judge noted, he considered January 9, 2013 as the filing date. Pursuant to the pro se prisoner mailbox rule, a pro se prisoner's habeas petition is deemed filed the moment he delivers it to prison officials for mailing.  Burns v. Morton, 134 F.3d 109,

date is arrived at by an analysis of when prior proceedings occured in his state case.  First, on April 28, 2008, the Pennsylvania Supreme Court denied an allowance of an appeal.  On July 27, 2008, ninety days later, the judgment became final and the one-year statute of limitations in which to file a federal habeas petition started to run.[5]  Petitioner filed his PCRA petition on October 28, 2008.  This petition was filed 93 days[6] into the one-year limitation period, and tolled the limitation period until April 10, 2012, when the Pennsylvania Supreme Court denied his petition for allowance of appeal.  On April 10, 2012, the statute of limitations resumed with 273 days remaining.  Thus, the federal Petition for a Writ of Habeas Corpus had to be filed on or before January 8, 2013 to comply with the one-year time period.  Since it was filed on January 9, 2013, it was untimely.

Petitioner asserts the following objections regarding timeliness:  (1) the Magistrate Judge should not have raised the issue sua sponte and the Commonwealth waived the issue in this case; (2) the Magistrate Judge erred in finding that equitable tolling does not apply; and (3) the Magistrate Judge erred in determining that Petitioner did not suffer prejudice by the timeliness issue being raised.  Each objection is without merit and will be addressed below.

---

113 (3d Cir. 1998).  January 9, 2013 is the earliest date the Petition could have been filed, and even using this date, the Petition is still untimely.

[5]  Pursuant to United States Supreme Court Rule 13, a defendant has 90 days to file a petition for writ of certiorari to the Supreme Court of the United States.

[6]  The Magistrate Judge's Memorandum filed in connection with the Order to Show Cause regarding timeliness (Doc. No. 15) states that 92 days passed between July 27, 2008 and October 28, 2008.  This Court calculates the time frame between July 27, 2008 and October 28, 2008, as 93 days.  However, July 27, 2008 was a Sunday.  Therefore, Petitioner had until Monday, July 28, 2008 to file a petition for writ of certiorari.  Fed. R. Civ. P. 6(a)(1) ("When the period is stated in days . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").  92 days passed between July 28, 2008 and October 28, 2008.

### a. Objection to the Magistrate Judge Raising Untimeliness <u>Sua Sponte</u> and Not Finding that the Commonwealth of Pennsylvania Waived this Issue

Petitioner argues that the Commonwealth of Pennsylvania waived the statute of limitations as a defense by failing to raise it, and that the Magistrate Judge abused his discretion by raising the issue of untimeliness <u>sua sponte</u>. He relies on <u>Day v. McDonough</u>, 547 U.S. 198 (2006), and Rule 5(b) of the Rules Governing Section 2254 Cases, arguing that if a state waives the assertion of a statute of limitations defense in its responsive pleading, then the district court cannot raise it <u>sua sponte</u>. Petitioner also contends that "it was the Magistrate Judge's obligation to administer the waiver rules evenhandedly and not to [choose] to assist the attorney's representing the State…" (Doc. No. 25 at 4.)

The Magistrate Judge was well within his discretion in raising the statute of limitations issue <u>sua sponte</u>. The Third Circuit has held that "[h]aving in mind that AEDPA's statute of limitations, like other procedural habeas issues, furthers the principles of comity, finality, and federalism, . . . a federal magistrate judge may . . . raise *sua sponte* the AEDPA statute of limitations defense even after an answer has been filed." <u>Long v. Wilson</u>, 393 F.3d 390, 404 (3d Cir. 2004) (citations omitted). Moreover, the Third Circuit held:

> [U]pon finding a potential AEDPA statute of limitations problem in a habeas case arising under 28 U.S.C. §§ 2254 or 2255, a court may act *sua sponte* at any point in the proceedings, regardless of the government's position, provided the court (i) gives notice of the issue and an opportunity to respond; and, (ii) if the case has passed the Rule 4 stage, also analyzes the prejudice components of Rule 15(a) and *Long v. Wilson, 393 F.3d 390 (3d Cir. 2004)* that we reaffirm today.

<u>United States v. Bendolph</u>, 409 F.3d 155, 166 (3d Cir. 2005). The Magistrate Judge properly gave Petitioner notice of the untimeliness issue and opportunity to respond, and analyzed possible prejudice to Petitioner.

In challenging the findings of Judge Strawbridge, Petitioner relies upon <u>Day v. McDonough</u>, a U.S. Supreme Court decision that held that "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." 547 U.S. 198, 209 (2006). In <u>Day</u>, the Court also held that, "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions," and "assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." <u>Id.</u> at 210. The reasoning set forth in the R&R considered all the requirements of <u>Day</u>. <u>Day</u> does not hold, as argued by Petitioner, that invocation of the statute of limitations <u>sua</u> <u>sponte</u> is automatically an abuse of discretion. Moreover, <u>Day</u> does not limit its holding to cases where a state makes an "obvious computation error."

The instant case is not one where the Commonwealth of Pennsylvania expressly agreed to waive the statute of limitation defense. Rather, they failed to raise the defense, and did not submit a response to the Order to Show Cause on the timeliness issue. Petitioner argues that this conduct waived the statute of limitations defense and relies on Habeas Rule 5(b), which provides that the State's answer to a habeas petition "must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations." This Rule was also considered in <u>Day</u>, and found not to preclude a court from considering the preliminary issue of timeliness. <u>Id.</u> at 208-09.

Thus, the Magistrate Judge did not abuse his discretion by raising the issue <u>sua</u> <u>sponte</u>, and in finding that the Petition was untimely. Moreover, the failure of the Commonwealth to initially raise this defense did not result in an automatic waiver that precluded the Magistrate

Judge from considering it.   Petitioner was afforded the opportunity to respond, and the Magistrate Judge considered potential prejudice.   Furthermore, the Magistrate Judge even went a step further and considered the merits of the Petition even though the issues raises were time barred.   For all these reasons, and the ones that follow, the first objection is without merit.

### b. Objection to the Conclusion that Equitable Tolling does not apply in Petitioner's Case

Next, Petitioner objects to the finding that equitable tolling does not apply in this case. (Doc. No. 25 at 4-7.)   Petitioner argues that (1) filing the Petition one day late should be excused because the date on which he received notice of denial of his petitions for appeal were delayed by the mail; and (2) he exercised reasonable diligence in pursuing his rights.   As the Magistrate Judge noted, the statute of limitations under the AEDPA may be equitably tolled "only if [a petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."   Holland v. Florida, 560 U.S. 631, 649 (2010).   The Magistrate Judge was correct in finding Petitioner has not shown that he is entitled to equitable tolling because he has not established both elements.   Urcinoli v. Cathel, 546 F.3d 269, 273 (3d Cir. 2008) (the plaintiff bears the burden establish both elements of equitable tolling).   Petitioner had sufficient time to file the Petition and no extraordinary circumstances prevented him from doing so.

### i. Petitioner's Argument Regarding Mail Delays

In support of his argument for equitable tolling, Petitioner asserts that the AEDPA establishes that Congress' legislative intent was to provide every state prisoner 365 days to file a federal habeas corpus petition.  (Doc. No. 25 at 4.)  Here, Petitioner filed his Habeas Petition one day after the deadline, and argues that mailing delays affected the date he received the state court's denial of his Petitions for Allowance of Appeal.  Petitioner is essentially arguing that the

one-day delay should be excused because he did not receive timely notice of denial of his appeals. Petitioner does not know the exact date on which he received the state court's denial of his appeals dated April 28, 2008 and April 10, 2012, but asserts that it was not on the day of or the day after the denial. Petitioner therefore contends that he is being deprived of the full 365-day period because his time was diminished by the days it took for the notice of the state court decisions to be mailed to him, which was beyond his control.

The mailbox rule, however, does not apply when determining the date on which the one-year habeas limitation period is triggered. See Catala v. Bennett, 273 F. Supp. 2d 468 (S.D.N.Y. 2003); Garcia v. Shanks, 351 F.3d 468 (10th Cir. 2003). This Court is unaware of any cases in the Third Circuit, and Petitioner has not pointed to any, that hold that a prisoner's time to file a habeas petition commences when he receives notice of the document, thereby triggering the running of the statute of limitations.[7] Instead, the cases repeatedly hold that the statute of limitations begins to run on the date the final judgment was entered. See Horing v. Lavan, 197 F. App'x 90, n.1 (3d Cir. 2006) (under the [AEDPA], a writ of habeas corpus must be filed within

---

[7] The cases Petitioner relies on are inapposite. Woodward v. Williams set forth the rule that "AEDPA's statute of limitations is subject to equitable tolling only 'when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.'" 263 F.3d 1135, 1142 (10th Cir. 2001). Petitioner has not shown that he pursued his claims diligently or that there were any extraordinary circumstances. Phillips v. Donnelly held that the AEDPA "provides for the tolling of the statute of limitations under certain circumstances: the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 216 F.3d 508, 510 (5th Cir. 2000). This is a correct reference to the AEDPA, but affords Petitioner no help on his equitable tolling claim. In regard to Wilson v. Beard, the Magistrate Judge was correct to find this case inapt (Doc. No. 18 at 6) because Wilson focuses on statutory language found in 28 U.S.C. § 2244(d)(1)(D), which provides: "the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence." 426 F.3d 653, 659 (3d Cir. 2005). Petitioner had adequate time here to discover the factual predicate of his claims.

one year from the date on which the judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review."); Fahy v. Horn, 240 F.3d 239, 243 (3d Cir. 2001); Torlucci v. Evans, 364 F, App'x 338, 339 (9th Cir. 2010). Additionally, the time to file a petition for certiorari to the United States Supreme Court is "within 90 days after *entry of the judgment*." U.S. Sup. Ct. R. 13(1) (emphasis added). The time for filing does not provide that the petitioner may file 90 days after *receipt* or *notice* of the judgment. Therefore, Petitioner's argument is unavailing, and Petitioner's time period did in fact commence 90 days after the request for appeal was denied on April 28, 2008.

There are undoubtedly court decisions in which equitable tolling is applied due to delays beyond a petitioner's control. But the mere fact that the notice of the denial of appeal was mailed does not satisfy the requirements for equitable tolling. The fact that the notices were mailed and Petitioner received them several days after they were entered does not constitute "extraordinary circumstances" that prevented timely filing of his Petition for a Writ of Habeas Corpus.[8] See Saunders v. Senkowski, 587 F.3d 543, 559 (2d Cir. 2009) ("We are aware of no case holding that a delay occasioned by the normal course of the mail, as lengthened by a regularly scheduled holiday, constitutes an 'extraordinary' circumstance for purposes of equitable tolling, and we decline to so hold now."). The Magistrate Judge was correct in his finding that the mailing delays alleged here did not warrant equitable tolling.

---

[8]  Petitioner also relies on Pabon v. Sup., S.C.I. Mahonoy, Holland, and Wilson v. Beard, to argue that the limitations period should be interpreted flexibly in this case, and mail delays should be recognized. These cases also do not support Petitioner's position.

### ii.  Objection Regarding Exercise of Reasonable Diligence

Petitioner objects to the finding that he failed to show that he exhibited reasonable diligence in this matter.  He argues that the diligence required for equitable tolling is "'reasonable diligence' . . . not 'maximum feasible diligence.'"  Holland v. Florida, 560 U.S. 631, 653 (2010).  (Doc. No. 25 at 7.)    Petitioner argues that the record reflects no significant periods of time when he was not actively pursuing review of his conviction, and therefore his reasonable diligence is apparent.  (Doc. No. 25 at 7.)  He asserts that the Magistrate Judge does not describe any evidence he could have provided to exhibit reasonable diligence.

In order to invoke equitable tolling, the Petitioner must have shown that he exercised reasonable diligence in investigating and bringing his claims.  Saleem v. Hendricks, 306 F. App'x 739, 741 (3d Cir. 2009).  Here, Petitioner has not provided any explanation for why he waited until the end of the limitation period before filing his petition.  The Magistrate Judge was correct in finding that Petitioner has not shown he acted with reasonable diligence in pursuing his habeas petition.

### c.  Objection to Determination that Judgment Became Final on July 27, 2008

Petitioner objects to the Magistrate Judge's determination that the judgment of conviction became final on July 27, 2008.  He argues that when a state has chosen to relegate some claims to direct appeal and other claims, which it will not entertain on direct appeal, to the post-conviction process, the State has effectively bifurcated the appellate process thereby delaying the point of finality of a judgment of conviction.  These arguments are without merit.

Pursuant to U.S. Supreme Court Rule 13, a defendant has 90 days to file a petition for writ of certiorari to the Supreme Court of the United States.  On April 28, 2008, the Pennsylvania Supreme Court denied allowance of an appeal.  On July 27, 2008, ninety days later, the judgment

14

became final and the one-year statute of limitations in which to file a federal habeas petition started to run.  July 27, 2008 is the date of final judgment.  Petitioner had enough time within the state court appeals process to raise his claims.

### d.   Objection to Determination that Petitioner Failed to Show Substantial Prejudice as a Result of the Magistrate Judge's Raising the Statute of Limitations Issue <u>Sua</u> <u>Sponte</u>

Finally, Petitioner objects to the finding that he failed to establish substantial prejudice when the Magistrate Judge raised <u>sua</u> <u>sponte</u> the statute of limitations issue.  The Magistrate Judge correctly concluded that Petitioner did not, and has not, described any prejudice he incurred by the raising of the statute of limitations issue.  To determine whether prejudice is present, a court considers "whether [Petitioner] has had sufficient opportunity to respond to the issue, once raised," and "whether the government acted in bad faith."  <u>United States v. Bendolph</u>, 409 F.3d 155, 169 (3d Cir. 2005) (citing <u>Long v.Wilson</u>, 393 F.3d 390, 401 (3d Cir. 2004)).

Petitioner had the opportunity to respond to the timeliness issue. The Magistrate Judge afforded this opportunity to Petitioner in the June 11, 2015 Memorandum, (Doc. No. 15), and the Order to Show Cause, (Doc. No. 16).  Moreover, there is no evidence that the Commonwealth of Pennsylvania acted in bad faith.  Petitioner has not made any showing that would constitute prejudice.  (Doc. No. 17.)[9]

For all the foregoing reasons, the Court will adopt the Magistrate Judge's finding as to untimeliness.

---

[9] As noted, Petitioner mistakenly relies on <u>Day v. McDonough</u>, 547 U.S. 198 (2006).  (Doc. Nos. 17, 25.)  While the Supreme Court has ruled that courts are under no obligation to raise the time bar <u>sua</u> <u>sponte</u>, the holding does not prevent a federal court from doing so.  In <u>Day</u>, the Supreme Court noted that a federal court confronted with no intelligent waiver on the state's part may still correct the calculation error and dismiss the habeas petition as untimely.  <u>Id.</u> at 202.  The Supreme Court further noted that "a court must accord the parties fair notice and an opportunity to present their positions," which was clearly done in the case before this Court. <u>Id.</u> at 210.  Therefore, <u>Day</u> does not support Petitioner's argument on prejudice.

**B.** **Petitioner's Objection to Finding that the Sixth Amendment Speedy Trial Claim was Procedurally Defaulted, or in the Alternative, Meritless**

**a.** **Objection to Finding that his Sixth Amendment Speedy Trial Claim was Procedurally Defaulted**

Petitioner notes that the Magistrate Judge correctly identifies the fact that the speedy trial issue was not included within the argument section of the <u>Anders</u> Brief filed on direct appeal in this matter. (Doc. No. 25.) By failing to raise his constitutional right to a speedy trial in his appellate brief to the Superior Court, Petitioner waived the right to appellate review of the issue under well-established Pennsylvania procedural law. <u>Glenn v. Wynder</u>, 2012 WL 4107827, at *42 (W.D. Pa. Sept. 19, 2012) *aff'd*, 743 F.3d 402 (3d Cir. 2014) ("Petitioner's failure to properly raise and address this claim in his appellate brief in compliance with Pennsylvania Rule of Appellate Procedure 2116(a) precluded the Superior Court's review of the claim and constitutes waiver under state law.") (footnote omitted)). Therefore, the Magistrate Judge's finding on this claim is correct and the claim was procedurally defaulted.

Even if Petitioner did attempt to submit this issue for review in a response to counsel's <u>Anders</u> brief (<u>See</u> Doc. No. 25 at 12), and was able to show that the Sixth Amendment right to speedy trial claim was not procedurally defaulted, this claim would still be denied based on the merits.[10] As discussed below, Petitioner has not shown that he was denied his constitutional right to a speedy trial.

**b.** **Objection to Finding that Petitioner was not Denied his Right to a Speedy Trial**

The Supreme Court has instructed courts to look to four factors in determining whether a defendant's right to a speedy trial has been violated: "[l]ength of delay, the reason for the delay,

---

[10] "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. 2254(b)(2).

16

the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). "*Barker* instructs that 'different weights should be assigned to different reasons,' and in applying *Barker*, we have asked 'whether the government or the criminal defendant is more to blame for the delay.'" Vermont v. Brillon, 556 U.S. 81, 90 (2009) (internal citations omitted). If the delay is caused by the defense, it weighs against the defendant. Id.

Petitioner was arrested on May 3, 1999, but was not brought to trial until December 2, 2003. (Doc. No. 18 at 13). The Magistrate Judge correctly noted that the "vast majority of delays that occurred were due to petitioner's own requests for continuances, his attorney's illness, the trial judge's illness, and various motions attributed to petitioner or his counsel." Id; Commonw. v. Bey, 437 EDA 2005, CP 9906-0382 (Feb. 9, 2007). In reaching this conclusion, the Magistrate Judge properly deferred to the factual findings made by the state court, which are entitled to a presumption of correctness. Miller-El v. Cockrell, 537 U.S. 322, 324 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.") (citing 22 U.S.C. § 2254(e)(1)).

Petitioner argues that the trial court's own admissions about uncertainty as to which party or the court caused certain delays is clear and convincing evidence not to treat the trial court's decision as presumptively correct. But, as noted by the Magistrate Judge, "[u]nintentional delays caused by overcrowded court dockets or understaffed prosecutors are among the factors to be weighed less heavily than intentional delay, calculated to hamper the defense, in determining whether the Sixth Amendment has been violated…" Strunk v. United States, 412 U.S. 434, 436 (1973). The delays attributed to Bey or his counsel amount to at least 713 days while those attributed to the prosecution amounted to, at most, 81 days. See Brillon, 556 U.S. at 90 (courts must look to whether the prosecution or defendant is to blame for delays in applying Barker).

Petitioner also objects to the Magistrate Judge's reliance upon the trial court's "narrative of the reasons and causes of the delays." (Doc. No. 25 at 13.)  Petitioner specifically points out an instance in the trial court's opinion that the trial court itself acknowledges that it was unclear why a 115 day delay occurred. (Id.)  However, the Magistrate Judge explains how each delay was factored into the analysis in footnote 13 of the Report and Recommendation (Doc. No. 18 at 15, n.13):

> In attributing 713 days to the Petitioner, we included only those delays that are *clearly attributed* to Bey or his counsel from the record and which were labeled "excludable by the trial court." *Commonw. v. Bey*, 437 EDA 2005, CP 9906-0382, at *16 (Pa. Ct. Cm. Pl. Feb. 9, 2007).  That time which the state court refers to as "excludable," per Pennsylvania law, include delays granted at the defense's request, where the defendant or his counsel are unavailable, as well as those where a defendant has expressly waived his right to a prompt trial under Pa. R. Crim. P. 1013.  *See Commonw. v. Preston*, 904 A.2d 1, 11 (Pa. Super. 2006). As to the 81 days attributed to the Commonwealth, we have assumed, for the sake of argument, that the 69 day delay, beginning on December 8, 2000 with "mixed" predicates, which was attributed to both the defense and prosecution, as being attributed solely to the Commonwealth, despite it being described as "excludable" and despite the fact that it is clear that not all of that delay was caused by the prosecution.  We have also assumed that the 12 day delay deemed "excusable" starting September 22, 2003, could be attributed to the Commonwealth despite those twelve days also being attributed to the fact that the court was on trial.

(Id. at 15, n.13) (emphasis added).

Under 22 U.S.C. § 2254(e)(1), it is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence.  Petitioner has failed to direct the Court to evidence to support overturning the Magistrate Judge's findings on the speedy trial issue, other than conclusory statements.  Thus, the Magistrate Judge was correct in deferring to the state court's findings as presumptively correct.

In any event, the Magistrate Judge and this Court have independently reviewed the delays as described by the trial court.  (See Doc. No. 18 at 13, n.12.)  See also Commw. v. Bey, 437 EDA 2005, CP 9906-0382, at *16-18 (Pa. Ct. Cm. Pl. Feb. 9, 2007).  The Magistrate Judge

correctly found "that the delays in state court were primarily due to motions filed by the defense or consequent to logistical issues of the court which generally weighs against Bey's claim that his right to a speedy trial has been violated." Vermont instructs that delays attributable to the defense are weighed against Petitioner. 556 U.S. at 90.

Thus after considering the Barker factors, the Magistrate Judge was correct in finding that they do not support a speedy trial violation in Petitioner's case. The state court and Magistrate Judge correctly allocated the weight to be applied to each of the factors and the reasons for the delays. For all these reasons, Petitioner's claim that he was denied his right to a speedy trial is meritless.

### c.   Objection to a Finding that the Delay in Fact did not Cause Prejudice

Petitioner claims the Magistrate Judge mischaracterizes his claim of prejudice as a result of the delay. But he still failed to present evidence of any prejudice he suffered by the delay of his trial due to the months attributed to the Commonwealth. The Magistrate Judge found, "approximately two years of [the delay] was attributed to the Defense, [and] only a matter of months was attributed to the Commonwealth." (Doc. No. 18 at 16.) As discussed above, a delay caused by the defense is weighed against the Petitioner. Brillon, 556 U.S. at 90-91 (delay caused by defendant's counsel is also charged against defendant because the attorney is the defendant's agent). Petitioner has failed to show how any delay attributable to the Commonwealth has caused him prejudice.

### C.   Petitioner's Objection to Finding that he was not Denied his Sixth Amendment Right to the Effective Assistance of Counsel

Petitioner claims that the Magistrate Judge's determination on the claim of denial of his constitutional right to effective counsel is based wholly on an incorrect and inaccurate conclusion of the state court, and that the ineffectiveness of post-conviction counsel is the cause of any

procedural default.[11]  However, the Magistrate Judge correctly found that Petitioner's ineffective assistance of counsel claims were waived because Petitioner "failed to raise them in his original or an amended PCRA petition."  (Doc. No. 18 at 22.)  See Commw. v. Bey, 549 EDA 2010, *11 (Pa. Super. Aug. 11, 2011);  Commw. v. Thomas, 744 A.2d 713, 715 n.4 (Pa. 2000) (claims were waived because they were not raised in appellant's amended PCRA petition).  See also 42 Pa. C.S. § 9544(b).

This Court agrees with the Magistrate Judge's statement that "[a]s the Superior Court set out in its opinion during the PCRA process, the petitioner's ineffectiveness claims concerning his right to a speedy trial, the failure to properly cross-examine and impeach a witness, the failure to conduct pretrial investigations and interviews, and the failure to interview certain psychiatric witnesses, were all waived in that Bey failed to raise them in his original or an amended PCRA petition."  (Doc. No. 18 at 22) (quotations and citations omitted).  This procedural waiver was the result of a "firmly established and regularly followed state practice," and there are adequate and independent state grounds for the state court's ruling and the claim is procedurally defaulted. Ford v. Georgia, 498 U.S. 411, 424 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).  See Johnson v. Pinchak, 392 F.3d 551, 561 (3d Cir. 2004).  Therefore, because Petitioner "failed to abide by state procedural mandates and was found to have waived these

---

[11] Petitioner mistakenly relies on Commw. v. Fiero, 462 Pa. 409 (Pa. 1975) and Commw. v. Sangricco, 490 Pa. 126 (Pa. 1980) to support his claims of ineffectiveness of counsel.  Both cases do not support Petitioner's position.  In Fiero, the court found that the nature of the proceedings in that case did not comply with the Post-Conviction Hearing Act.  Fiero, 462 Pa. at 413 (where petitioner for post-conviction relief was filed pro se, there was no attempt after counsel's appointment to file an amended petition, and the petition was dismissed without evidentiary hearing or oral argument).  In Sangricco, the court found the petitioner did not have the benefit of legally trained counsel to represent him because appointed counsel not only failed to amend the new pro se petition but also failed to argue or brief the second set of claims.  Sangricco, 490 Pa. at 131-133.  These cases do not apply here.

claims before the Superior Court, they are procedurally defaulted." (Doc. No. 18 at 22-23.) The Magistrate Judge was correct in his findings.

> **D.     Petitioner's Objection to the Finding that He Provided Insufficient Evidence to Warrant an Inquiry into any Alleged Juror Misconduct**

The Court agrees with the Magistrate Judge and the State Court that "[Petitioner] had not presented a sufficiently credible allegation that the jury was improperly influenced so as to mandate further inquiry." (Doc. No. 18 at 25.) Petitioner argues that he was not given the full and fair opportunity to determine whether a member of the jury was improperly influenced. (Doc. 25 at 35.)   The Third Circuit has held that where the "only source for the alleged misconduct was not found not to be credible" and there was no "unequivocal proof of any misconduct," further investigation into allegations of misconduct was not required.   United States v. Rodriguez, 151 F. App'x 182, 186 (3d Cir. 2005).  See United States v. Moon, 718 F.2d 1210, 1234 (2d Cir. 1983) ("a trial court is required to hold a post-trial jury hearing only when reasonable grounds for investigation exist.  Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence") (citations omitted), *cert. denied*, 466 U.S. 971 (1984).    Additionally, "[t]he more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate." United States v. Bertoli, 40 F.3d 1384, 1395 (3d Cir. 1994) (quoting United States v. Caldwell, 776 F.2d 989, 998 (11th Cir. 1985).   "[I]n determining whether to voir dire the entire jury, the trial court must 'balance the potential benefits of further investigation against the possible harm of calling attention to a relatively minor situation about which the other jurors may have been unaware.'" Rodriguez, 151 F. App'x  at 184-85 (citations omitted).

Petitioner has not provided evidence of juror misconduct other than information received during a one minute conversation through a slot in the food pantry with inmates who were living in a different housing unit than the petitioner.  (Doc. No. 25 at 34.)

> When I returned back to the jail I was informed there's a juror sitting on the panel [and] that her husband works in the jail.  I'm in with several inmates that work in the area where he works at [and he] has informed me [that he] has been coming to work every day talking about my case and what his wife has been telling him was going on at the trial.  I don't want to talk about exactly what they was saying that he was saying.  All I know is what they [were] telling me.  If you could just call her in and you could ask her maybe she'll tell you exactly what she was saying.  I know what they was telling me she was saying but I don't want to go into what somebody else was telling me she was saying.

(Doc No. 18 at 23.)  Petitioner did not know which juror was referred to and his allegations were hearsay.  The state court did not have any basis to believe that any juror had failed to abide by their duty not to discuss the case with others and the judge found that his allegation was "certainly insufficient" for her to make any determination as to juror misconduct.  (Id.)

Vague allegations of misconduct alone do not require the trial court to further investigate.  See United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993) ("[I]n determining whether a [evidentiary] hearing must be held [for an allegation of jury misconduct], the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source.").  Here, the Magistrate Judge noted that "[n]o declarations, affidavits, or the like were presented to substantiate his allegation, which, we note, was presented only after the jury had convicted [Petitioner] of the various offenses."  (Doc. No. 18 at 29.)

This Court agrees that no further action with respect to the juror was required.  Petitioner's assertion that juror misconduct occurred "does not raise any inference that the misconduct had prejudiced his right to an impartial jury."  (Id.)

### a. Objection to the Magistrate Judge's Credibility Determination

Petitioner argues the Magistrate Judge erroneously interjected a credibility determination regarding this issue where the state court's decision was not based on the credibility of the evidence presented.   However, the credibility of the source of Petitioner's allegation was important to consider.  See Rodriguez, 151 F. App'x at 186; Moon, 718 F.2d at 1234; Angulo, 4 F.3d at 847.  Moreover, "credibility determinations are within the sound discretion of the trial court. . . ."  Rodriguez, 151 F. App'x 182, 185 (3d Cir. 2005).  Thus, the Magistrate Judge was correct in determining that "the trial court was in the best position to determine the credibility of [Petitioner's] allegations which were only presented after the jury had found [Petitioner] guilty of the offenses charged."  (Doc. No. 18 at 27.)

### E. Petitioner's Objection to Finding that he was not Denied his Sixth Amendment Right to Compulsory Process

### a. Objection to the Finding that his Claim was Procedurally Defaulted

Petitioner objects to the finding that his claim was procedurally defaulted.  In particular, Petitioner claimed that he was denied his constitutional right to compulsory process.   The Magistrate Judge was correct to find that the claim was procedurally defaulted because it was not included in his appellate brief in state court.  Wynder, 2012 WL 4107827 at *42-43, *aff'd*, 743 F.3d 402 (3d Cir. 2014) ("[Petitioner] did not pursue [the issue] on appeal by including it within his appellate brief. Consequently, this claim has not been exhausted, and…is procedurally defaulted.").  Even if this claim was not procedurally defaulted, the claim still does not survive on the merits, as discussed below.

**b.  Objection to the Determination that the Statement of Nashonda Owens was not Part of the State Record**

The Magistrate Judge noted that Petitioner argued in his Habeas Brief that Nashonda Owen's heard that "one of these individuals, whom [Owens] unequivocally described as living in the home at which the complaining witness, Mr. Brian Rowley lived alone, [had] stated that 'he was going to get his band real quick and would be right back.'"  (Doc. No. 18 at 31, n.26.)  Petitioner argues that review of the record shows that the trial court specifically requested that a copy of Owens's statement be presented to her for review.  Petitioner claims that this evidence in the record serves to show the Magistrate Judge's negligent review of the record.

The Court has reviewed the testimony that Petitioner points to and finds the Magistrate Judge was correct.  There was no reference to this specific sentence in the trial court records, and the trial judge found that the submitted testimony would be inadmissible hearsay.  (N.T. Dec. 5, 2003, at 152-54.)  (See Doc. No. 18 at 31.)  The Magistrate Judge was correct in refusing to consider her testimony because it was not shown in the record to have been presented to the state court.

**c.  Objection to the Determination that the Statement of Nashonda Owens was Inadmissible Hearsay**

Petitioner argues the Magistrate Judge incorrectly found that the state trial court ruled properly in not compelling the testimony of Nashanda Owens at trial through continued attempts to serve a subpoena.  Initially the Magitrate Judge noted that this claim was not included in Petitioner's appellate briefs and therefore is procedurally defaulted.  (Doc. No. 18 at 30.)  The

Magistrate Judge then discussed the issue on the merits and properly found that the trial court committed no error and that the claim made in the Petition is without merit.[12]

First, the testimony that Petitioner wished to present from Owens was inadmissible hearsay. "The transcript reflects that Bey asserted that Nashonda Owens would testify that she had heard another individual or individuals say something to the effect of 'something is getting ready to go down.' (N.T. Dec. 5, 2003 at 154.)"  (Doc. No. 18 at 31) (footnote omitted). "'Hearsay' is defined as a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible expect as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.  The trial court and the Magistrate Judge properly ruled that Owen's statement is hearsay and not permitted under the Pennsylvania rules of evidence.

### d.   Objection to the Determination that the Trial Court's Decision to not Compel Testimony of Nashonda Owens was Not Arbitrary

The Magistrate Judge correctly found that only if the trial court's evidentiary decision to deny the subpoena was arbitrary can Petitioner potentially make out a constitutional violation. United States v. Zemba, 59 F. App'x 459, 467 (3d Cir. 2003) ("Because the District Court's decision to deny the continuance [to locate a missing witness] was based on an evidentiary ruling that was not arbitrary, Zemba's Sixth Amendment compulsory process right was not violated.")

---

[12] The cases Petitioner relied on are not pertinent to his case.  Washington v. Texas involved a state procedural statute that provided "persons charged as principals, accomplices, or accessories in the same crime cannot be introduced as witnesses for each other." 288 U.S. 14, 15 (1967).  In Chambers v. Mississippi, the Supreme Court explained that the ruling is limited to the facts and circumstances of that case, which are distinct from Petitioner's case.  410 U.S. 284, 303 (1973).   In Chambers, confessions were made "spontaneously to a close acquaintance shortly after the murder had occurred," each confession was corroborated, and were "unquestionably against interest" in order to overcome to state hearsay rule in favor of fairness.  Id. at 300-01.  Petitioner simply does not have a similar situation here.

(See Doc. No. 18 at 32.)  As discussed above, the out-of-court statement of Owen's was in fact hearsay, thus the trial judge's ruling was not arbitrary.  See Pa.R.E. 801(c); Pa.R.E. 802.

    **F.**    **Petitioner's Objection to a Finding that his Waiver of Trial Counsel was Procedurally Defaulted**

Petitioner argues that the Magistrate Judge erred in his review of Petitioner's claim that he did not properly waive his right to counsel at trial because the Superior Court specifically referenced this claim in denying the petitioner's direct appeal.  (Doc. No. 25 at 20.)  The Superior Court stated that "the record reflects no legal error in the trial court's conclusion that Appellant's decision to represent himself (with backup counsel) was knowing, intelligent, and voluntary." (Doc. No. 9-2 at 8.)  Petitioner is correct that the Superior Court raised his waiver of counsel.  However, it was the Superior Court's "independent review of the record" that "reflects no non-frivolous issues that [Petitioner] could have raised."  (Id.)

Petitioner failed to raise the procedural default issue as a basis for relief before the Superior Court in his appellate brief, "which is an established procedural requirement to properly bring a claim on appeal in the Pennsylvania courts."  (Doc. No. 18 at 21.)  See Wynder, 2012 WL 4107827 at *42, aff'd, 743 F.3d 402 (3d Cir. 2014).  For this reason, the effective use of his waiver of his right to counsel was not "fairly presented" to state courts through the appellate process.  See O'Sullivan, 526 U.S. at 845 ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts") (emphasis in original).  Thus, the Magistrate Judge was correct in finding that the claim was not properly pursued in state courts and was procedurally defaulted.  (Doc. No. 18 at 21.)

G.     **Petitioner's Objection to Denial of Due Process Claims**

   a.   **Objection to the Finding that Petitioner's Due Process Right to a Fair Trial Claim was Procedurally Defaulted**

The Magistrate Judge correctly found that Petitioner's <u>Brady</u> claim was not presented to the state courts for a full opportunity to adjudicate the claim because Petitioner failed to raise it before the Superior Court during his direct appeal.  (Doc. No. 18 at 16-17.)  Thus, this claim is procedurally defaulted because Petitioner was required to fairly presented the claim to the state courts for review and exhaustion.  <u>Wenger v. Frank</u>, 266 F.3d 218, 233-24 (3d Cir. 2001) (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999)).  However, even if the <u>Brady</u> claim was not procedurally defaulted, the Magistrate Judge still correctly found that Petitioner's claim is meritless and provides no basis for relief.  (Doc. No. 18 at 18.)

   b.   **Objection to the Ruling that the Evidence Failed to Establish that the Prosecution used False Evidence at Trial and did not Turn Over Rough Notes of Interviews**

Petitioner claims that Larry Cutner's and Brian Rowley's testimony were false.  The Supreme Court has held that a state's knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment.  <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972); <u>Blackwell</u>, 387 F.3d at 242.  The Third Circuit has instructed courts that in order to show this constitutional violation, Petitioner must show that: "(1) [the witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." <u>Blackwell</u>, 387 F.3d at 242.

The Magistrate Judge correctly found that "[t]here is simply no reasonable inference from the record before us that the testimony was false, let alone that the prosecutor knew or should have known of any alleged falsity prior to or after presenting the testimony of Cutner and

27

Rowley." (Doc. No. 18 at 20.) This Court agrees with the Magistrate Judge's finding that "[t]he fact that a witness does not testify in complete accord with a prior written statement or with the narratives presented by other witnesses does not establish that the district attorney was knowingly presenting false testimony or that the testimony was in fact false." (Id.) See United States v. Payne, 102 F.3d 289, 292 (7th Cir. 1996) ("mere inconsistencies in testimony fall short of establishing perjury and most certainly do not establish that the government knowingly utilized perjured testimony"); Gay v. Wilson, 2007 WL 2823659, at *6 (E.D. Pa. September 24, 2007) ("in order to sustain a claim of constitutional error, the petitioner must show that the witness *actually* perjured himself and the government knew or should have known of his perjury") (emphasis added). Here, Petitioner merely recites the testimony of Mr. Cutner, Mr. Rowley, and Detective Revel as his evidence of perjury and the Government's knowledge of perjury. (Doc. No. 25 at 22-23.) But this testimony does not show actual evidence of perjury or that the Government knowingly advanced alleged false testimony to convict Petitioner. This claim therefore is without merit.

Moreover, Petitioner has failed to show that rough notes of interview even exist. Petitioner contends that witnesses were interviewed shortly before trial and that he was only provided with their earlier statements. (Doc. No. 25 at 19.) As the Magistrate Judge found, there is no indication on the record that these later statements exist. His argument amounts to little more than an assertion that because certain witnesses testified in ways that did not precisely track the earlier statements they gave to law enforcement, the prosecutor must have later interviewed them, taken notes reflecting these inconsistencies, and withheld those notes from the defense. (Doc. No. 18 at 17.) This claim regarding rough notes is groundless.

**H.**    **Petitioner's Objection to the Determination that No Certificate of Appealability Should be Issued**

Petitioner argues that regarding each objection, it cannot be said that no reasonable jurist would find that the Magistrate Judge's decision here was debatable or wrong.  Petitioner argues that a Certificate of Appealability ("COA") should be issued under 28 U.S.C. § 2253(c) where a petitioner makes a "substantial showing of the denial of a constitutional right," in that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner . . ." Slack v. McDaniels, 529 U.S. 473, 484 (2000).  Petitioner argues that the standard of review is designed to allow all but frivolous issues to be appealed.  Further, Petitioner asserts that there is no requirement for him to prove that some jurists would grant the petition for habeas corpus before the COA should be issued.  Petitioner contends that the claims presented are adequate to proceed further, and are well within the standard for granting the COA. Therefore, even if the Court denies relief on the merits, the COA should be issued.

A Certificate of Appealability will not be issued because, based on the analysis contained in the Magistrate Judge's Reports and Recommendations, as approved and adopted by this Court, a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the Habeas Petition.  See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473 (2000)

**V.    CONCLUSION**

For the foregoing reasons, the Court will approve the Report and Recommendation (Doc. No. 23) and deny Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1.)  A Certificate of Appealability will not be issued.

An appropriate Order follows.